## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JESTIN TAFOLLA,

                Petitioner,

v.

DAVID ROGERS, Warden,[1]

                Respondent.

Case No. 22-CV-0140-SEH-SH

### OPINION AND ORDER

Petitioner Jestin Tafolla ("Tafolla"), an Oklahoma prisoner appearing through counsel, seeks federal habeas relief under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2016-2204. Specifically, Tafolla alleges: i) he was denied his Sixth Amendment right to confrontation of a witness; ii) the prosecutor engaged in misconduct; iii) he received ineffective assistance of appellate and trial counsel; iv) the trial court permitted prejudicial evidence to be admitted in violation of his Fourteenth Amendment right to due process; and v) his

---

[1] Tafolla presently is incarcerated at the Joseph Harp Correctional Center in Lexington, Oklahoma, and David Rogers is the current warden of that facility. The Court therefore substitutes David Rogers, Warden, in place of Jim Farris as party Respondent. *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts.* The Clerk of Court shall note on the record this substitution.

sentence is excessive and violates the Eighth Amendment.  ECF Nos. 2 and 3.

Having considered Tafolla's Petition for Writ of Habeas Corpus [ECF No. 2]

and Brief in Support of Petition ("Brief") [ECF No. 3], Respondent's Response

to Petition for Writ of Habeas Corpus [ECF No. 9], Tafolla's Reply [ECF No.

11], the record of state-court proceedings provided by Respondent [ECF Nos.

9-1 through 9-12 and ECF No. 10], and applicable law, the Court finds and

concludes that this matter can be resolved without an evidentiary hearing

and that the Petition shall be denied.

## BACKGROUND

On June 9, 2017, a Tulsa County jury found Tafolla guilty of assault

and battery with a dangerous weapon and carrying a weapon unlawfully.

ECF No. 10-9 at 45-46.[2]  At trial, Tulsa Police Detective James Dawson

testified that on the afternoon of April 5, 2016, he and Officer Korey Scott

were driving back to the police station at the end of their shift.  ECF No. 10-3

at 152-154.  During this drive they observed a white male, Tafolla, straddling

a black male, Dennis Clayton ("Clayton"), and hitting him repeatedly in the

face. *Id*. at 154. The officers could see Clayton's head bouncing off the

sidewalk with each hit.  *Id*. at 154-156.  The officers activated the lights on

their car and drove up to the two men.  *Id*. at 156-157.  When Tafolla noticed

---

[2]  The Court's citations refer to the CM/ECF header pagination.

the officers approaching, he stood up, pulled brass knuckles off his hand, and threw the weapon into the grass ten to fifteen feet away. *Id.* at 156-157. The officers separated and handcuffed both men so they could decide what had happened and determine if anyone needed medical attention. *Id.* at 157-159.

Dawson recovered the brass knuckles, which were covered in wet blood. ECF No. 10-3 at 174; ECF No. 10-5 at 11-15. The weapon was distinctively styled, with two wolf head carvings on each end and sharp edges protruding from the top. *Id.* at 171-172; ECF No. 10-5 at 1, 11-15. No other weapons were found at the scene. ECF No. 10-3 at 171. The officers observed soda on the inside and outside of Tafolla's vehicle. *Id.* at 171.

Clayton was bleeding profusely and had lacerations on the front and back of his head. *Id.* at 159. The lacerations on the back of his head were consistent with the shape of the wolves' heads on the brass knuckles. *Id.* at 176; ECF No. 10-5 at 8-9, 16.

Over Tafolla's objection,[3] the trial court permitted Dawson to recount Clayton's description of events leading up to the officers' arrival to the jury.

---

[3] Tafolla filed a motion in limine as to hearsay. *See* ECF No. 10-2 at 59; *see also* ECF No. 10-7 at 71-72. Tafolla contended Dawson's statements concerning what Clayton told him were inadmissible hearsay. The trial court heard extensive argument and ruled that so long as the State laid the proper foundation, the statements would be admissible as excited utterances. *See* ECF No. 10-2 at 59-71. Tafolla renewed his objection during Dawson's testimony at trial, but the trial court ruled the State had laid the necessary foundation. ECF No. 10-3 at 160-62.

3

ECF No. 10-3 at 160-168.  Dawson testified that Clayton told him that Tafolla's vehicle cut him off on the freeway and he became "very upset" and followed Tafolla to a parking lot. Tafolla exited his vehicle, and the two men "had words."  *Id.* at 160-161.  Clayton described it as a "heated discussion," and as a "road rage incident".  *Id.*  Tafolla and Clayton were returning to their vehicles when Lara Maloy ("Maloy"), Tafolla's girlfriend who was a passenger in Tafolla's vehicle, called Clayton a n****r.  *Id.* at 161, 166. Clayton then "lost his cool" and grabbed a cup of soda from his car. He approached Maloy with the cup as they yelled at each other, and then he threw the cup at Tafolla's vehicle.  *Id.* at 167.  After that, Tafolla "sucker punched [Clayton] in the back of his head."  *Id.* at 168.  Clayton did not testify at trial.  *See* ECF No. 10-3 at 2.

After speaking with Clayton, Dawson spoke with Tafolla.  *Id.* at 168. Dawson observed Tafolla in a white tank top that exposed his tattooed arms, neck and chest.  *Id.* at 157, 168; *see also* ECF No. 10-5 at 2-6.  Dawson observed cloverleaf tattoos on Tafolla's body and asked if he "was Irish mob." ECF No. 10-3 at 169.  Tafolla responded by pointing to one of his tattoos and stating, "I am UAB.  Do you see the fucking swastika?"  *Id.* at 169.  Tafolla had several visible tattoos that Dawson recognized as being associated with the United Aryan Brotherhood ("UAB"), including an iron cross on his throat, an inscription of "white pride" on his right arm, and a swastika and

4

inscription of "white and wild" on the back of his neck.  ECF No. 10-3 at 151, 178-180; *see also* ECF No. 10-5 at 2-6.

Dawson also observed blood around Tafolla's mouth which indicated to him that Clayton "had at least hit him one time at least in the mouth area." ECF No. 10-3 at 177.  Tafolla's recitation of the incident was "about 90 percent consistent" with Clayton's.  *Id.* at 169.  Ultimately, Tafolla was placed under arrest, and paramedics were summoned to treat Clayton.  *Id.* at 180, 186.  Clayton refused transport to the hospital for further treatment.  *Id.* at 186-187.

Tafolla testified he accidentally cut Clayton off on the freeway, Clayton accelerated to catch up to Tafolla, honked his horn and drove up alongside Tafolla's vehicle on the one-lane exit ramp.  *Id.* at 240-241.  Tafolla pulled into the parking lot, Clayton followed, they both exited their vehicles and approached one another.  *Id.* at 242.  Clayton was screaming and "very aggressive" until he got closer to Tafolla.  *Id.* at 242.  Tafolla apologized for cutting Clayton off, and explained his girlfriend was pregnant and he did not want problems.  *Id.* at 242.  Clayton calmed down, and the two shook hands and returned to their vehicles.  *Id.* at 242.  Meanwhile, Maloy was standing outside Tafolla's vehicle, and Tafolla started "bickering" with Maloy because she had not followed his direction to say in the vehicle with the doors locked. *Id.* at 243.  According to Tafolla, Clayton was driving by at this time and

5

interjected, "yeah, get your bitch, cuz." *Id.* at 243-244. Tafolla associated the reference to "cuz" as a slang term used by Crips gang members. *Id.* at 244.

Maloy "started screaming" at Clayton, and Tafolla yelled at Maloy to get in the car. *Id.* at 245. Clayton then stopped his vehicle, backed it up, jumped out a second time and said, "oh, yeah, bitch," and reached into his car as if to grab something. *Id.* At this point, Tafolla retrieved his brass knuckles from inside his own vehicle. *Id.* As Clayton approached the front of the Tafolla's car towards Maloy, Tafolla said, "hey, bro, hold up." *Id.* at 245-46. Then, Clayton threw his drink and cup at Tafolla. *Id.* at 246. "[H]e threw a drink on me and punched me in the mouth, and at that point the fight pursued." *Id.* According to Tafolla, the fight "probably lasted five or ten seconds" and there was no time to retreat. *Id.* at 247. Tafolla testified, "we were standing throwing blows all the way up until the cops pulled into the scene." *Id.* Tafolla testified he was defending himself, his wife and unborn child from being attacked. *Id.* at 246, 249.

Tafolla testified on direct examination as follows:

Q: Mr. Tafolla, would you have reacted the same whether Mr. Clayton had been black? White? Asian?
A: Yes, ma'am.

*Id.* at 249. His counsel also inquired if throwing a drink on a person was "kind of a prison tactic or gang thing to throw something in someone's eyes before you attack them?" *Id.* at 246. Tafolla answered, "yeah, kind of. … I

6

have seen people take shirts and stuff like that and throw them at someone's face. And when they go to flinch from it, they catch him off guard." *Id.* Tafolla also testified, "any time I have ever been in a fist fight it is a fear for my life. You know what I mean? Like any fight I have ever been in, it is a life or death situation. I have seen what can proceed from beatings, you know." *Id.* at 249.

On cross-examination, Tafolla denied hitting Clayton from behind. *Id.* at 250-251. Tafolla testified, "[w]hat I imagine happened in those photos [of Clayton's head injuries] is he probably got punched in his head and he ducked his head and in the heat of battle I continued to punch and hit the back of his head from the downward motion." *Id.* at 250-251, 254. Tafolla was further cross-examined:

> Q: What does [sic.] the wolves mean on those brass knuckles?
> A: I mean, the wolves are significant to UAB, I guess.
> Q: And you are UAB?
> A: Yes.

*Id.* at 256.

> Q: What does UAB mean to you?
> A: It means I did what I had to do to survive one of the worse prisons in Oklahoma when I first got locked up.
> Q: Because you have been to prison a few times, haven't you?
> A: Not a few times, sir.
> Q: You have been convicted of three prior felonies before you came to this courtroom, haven't you?
> A: Yes, sir.
> Q: To include you have been convicted not once, but twice for assault and battery with a dangerous weapon?

A:  Yes, sir.

*Id.* at 256-257.

Q:  Let me ask you, earlier you were telling Ms. Beach, you said, I have been in fist fights and all of this, and I kind of did what I had to do, and this is different, I was defend my – but you really do like beating minorities with instruments, don't you?
A:  No, sir.
Q:  Really?
A:  Yes, sir.
Q:  So this is the first time?
A:  No, sir.
Q:  It is not?
A:  Well, I wouldn't say I like it.  I am not saying it is not the first time, but I don't enjoy it.  I don't get no pleasure out of it.  I am not happy about the situation.

*Id.* at 258.

Q:  The first assault and battery with a dangerous weapon was a minority, wasn't it?
A:  Yes, sir, it was my ex-girlfriend's brother.
Q:  What color was he?
A:  He was black and so was she.
Q:  Okay.  The second assault and battery with a dangerous weapon, what color was he?
A:  I guess the guy was a Mexican.

***

Q:  What was the weapon from the first one?
A:  A knife.
Q:  What was the weapon from the second one? The one that you were railroaded on?
A:  A knife.

*Id.* at 263-264.  As noted, the jury found Tafolla guilty of assault and battery

with a dangerous weapon after former conviction of two or more felonies and

carrying a weapon unlawfully.  ECF No. 10-9 at 45-46.  As to the assault and

battery offense, he was sentenced to "LIFE[.]" ECF No. 10-14 at 38.

## DISCUSSION

### I.    Legal Standards

A federal court has discretion to grant federal habeas relief to a

prisoner who is in state custody pursuant to a final criminal judgment if the

prisoner "is in custody in violation of the Constitution or laws or treaties of

the United States."  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5

(2010) ("[I]t is only noncompliance with *federal* law that renders a State's

criminal judgment susceptible to collateral attack in the federal courts.").

But the federal habeas statutes, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") and as interpreted by the

United States Supreme Court, significantly limits a federal court's discretion

to grant habeas relief to a state prisoner.

### A. Exhausted Claims

"A state prisoner generally must exhaust available state-court remedies

before a federal court can consider a habeas corpus petition."  *Bland v.*

*Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A).

"Exhaustion requires that the claim be 'fairly presented' to the state court,

which 'means that the petitioner has raised the "substance" of the federal

claim in state court.'" *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir.

9

2009) (quoting *Bland*, 459 F.3d at 1011). "[T]o be fairly presented, the state-court claim must be the 'substantial equivalent' of its federal habeas counterpart." *Grant v. Royal,* 886 F.3d 874, 891 (10th Cir. 2018) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). "To satisfy exhaustion, then, the habeas petition's focus—as well as the alleged error that it identifies—cannot depart significantly from what the petitioner had presented to the state court." *Grant,* 886 F.3d at 891. "[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (citing *Picard*, 404 U.S. at 278).

When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant habeas relief as to that claim unless the prisoner first shows that the state court's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the state court's decision unreasonably applied the law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Brown v.*

11

*Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show that the state court's decision rests on an unreasonable determination of the facts. But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, the reasonableness of a state court's factual determination also is measured by *Richter's* fairminded-disagreement standard. *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017). And "if [*Richter's*] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision. *Mays v. Hines*, 592 U.S. 385, 391-92 (2021) (per curiam). In addition, when § 2254(d) applies, the federal court's review is limited to the same record that was presented in state court unless and until the petitioner satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal

court may then review the petitioner's federal claim *de novo*.  *Milton v.*

*Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014).  But, even on *de novo* review, a

federal court must apply § 2254(e)(1)'s presumption of correctness to any

state-court factual findings relevant to the federal claim.  *Sumpter v. Kansas*,

61 F.4th 729, 750 (10th Cir. 2023).  Moreover, even if the federal court

determines that a constitutional error occurred, the court may not grant

federal habeas relief unless the petitioner also "show[s] that the error had a

"'substantial and injurious effect or influence'" on the outcome of his trial."

*Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993)).

## B. Unexhausted Claims

Federal courts are precluded from "consider[ing] issues on habeas

review that have been defaulted in state court on an independent and

adequate state procedural ground, unless the petitioner can demonstrate

cause and prejudice or a fundamental miscarriage of justice."  *McCracken v.*

*Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) (internal quotation marks

omitted).  "To be independent, the procedural ground must be based solely on

state law."  *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (internal

quotation marks omitted).  To be adequate, a state procedural ground "must

be strictly or regularly followed and applied evenhandedly to all similar

claims." *Id.* (internal quotation marks omitted).  When the state pleads the affirmative defense of a state procedural bar, "the burden to place that defense in issue shifts to the petitioner," who must, at a minimum, provide "specific allegations ... as to the inadequacy of the state procedure." *Hooks v. Ward,* 184 F.3d 1206, 1217 (10th Cir. 1999).

Generally, "a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Bland,* 459 F.3d at 1012; *see* 28 U.S.C. § 2254(b)(1)(A).  "However, dismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds." *Smallwood v. Gibson,* 191 F.3d 1257, 1267 (10th Cir. 1999) (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)).  "Where the relevant state courts 'would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review.'" *Grant,* 886 F.3d at 892 (quoting *Bland,* 459 F.3d at 1012). "A petitioner may overcome the procedural bar only if he can 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Coleman,* 501 U.S. at 750).

14

Applying these legal standards, the Court turns to Tafolla's claims.[4]

## II.    Right to Confront Witness (Ground I)

First, Tafolla claims that his Sixth Amendment right to confrontation was violated because Clayton was not called to testify at either the preliminary hearing or trial, but Dawson was permitted to tell the jury what Clayton said to him.  ECF No. 3 at 2-4.  Tafolla argues Clayton's statements were testimonial and admitting Clayton's statements ran afoul of his Sixth Amendment right to confrontation.  *Id.* at 3-4.

---

[4] Tafolla requests an evidentiary hearing as to all issues asserted in the petition.  ECF No. 3 at 10.  But when § 2254(d)'s framework applies, as it does in this case, a federal habeas court must consider whether the petitioner has satisfied § 2254(d)(1)'s precondition to relief only by looking to the record that was presented in state court proceedings.  *Pinholster*, 563 U.S. at 181 (holding "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  In addition, "[i]f a prisoner has 'failed to develop the factual basis of a claim in State court proceedings,' a federal court 'shall not hold an evidentiary hearing on the claim' unless the prisoner satisfies one of two narrow exceptions, *see* 28 U.S.C. § 2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence 'by clear and convincing evidence,' § 2254(e)(2)(B)."  *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).  "In all but these extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'"  *Id.* (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).  For the reasons discussed next, Tafolla has not demonstrated, as to any claim, that he can satisfy § 2254(d)'s preconditions to habeas relief.  And Tafolla does not argue, much less demonstrate, that he can make the showings necessary to obtain an evidentiary hearing under § 2254(e)(2).  For these reasons, the Court denies Tafolla's request for an evidentiary hearing.

## A. The OCCA Decision

Tafolla's counsel did not object to Dawson's testimony as violating the Confrontation Clause at trial. Therefore, on direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") reviewed for plain error. ECF No. 9-1 at 15. The OCCA concluded Tafolla's Sixth Amendment right had been violated. *Id.* at 18-20. Citing and applying *Crawford v. Washington*, 541 U.S. 36 (2004)*, Davis v. Washington*, 547 U.S. 813 (2006), and *Michigan v. Bryant*, 562 U.S. 344 (2011)*,* the OCCA noted the informal questioning of Clayton and that "the situation had deescalated and was no longer an emergency." *Id.* at 18. The OCCA also held the admission of Dawson's testimony as to what Clayton told Dawson was plain error. *Id.* at 19.

The OCCA continued its analysis to determine whether the error was harmless beyond a reasonable a doubt. *Id.* at 19-20. Applying, *Chapman v. California,* 386 U.S. 18, 24 (1967), the OCCA reasoned,

> When the detectives arrived on the scene they saw Tafolla standing over the victim and beating him on the sidewalk. Marks left on the back of the victim's head by the brass knuckles support the finding that the victim was assaulted by Tafolla from behind. Given the properly admitted evidence, we find that the violation of the Confrontation Clause contributed neither to Tafolla's conviction nor to the punishment assessed; it was harmless beyond a reasonable doubt.

*Id.* at 20.

## B. Analysis and Conclusion

The Sixth Amendment of the United States Constitution guarantees an individual accused of a criminal offense the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court limited the Confrontation Clause's reach to "testimonial statements." 541 U.S. at 53–54. The Court held that in order for testimonial statements to be admissible, the out-of-court witness must be unavailable, and the defendant must have had a prior opportunity to cross examine the witness. *Id.* In *Davis v. Washington*, 547 U.S. 813 (2006), and *Hammon v. Indiana*, 547 U.S. 813 (2006), which were decided together, the Supreme Court defined more precisely the distinction between testimonial statements and nontestimonial statements. The Supreme Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822.

In *Michigan v. Bryant*, the Supreme Court affirmed that when "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope

17

of the [Confrontation] Clause." 562 U.S. at 358. To determine the primary purpose of an interrogation, courts must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Id.* at 359. In making this determination, the "existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances." *Id.* at 370. However, "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'" *Id.* at 374.

In his Reply, Tafolla states, "the OCCA's harmless error analysis was not objectively reasonable under the AEDPA." ECF No. 11 at 4. Tafolla takes issue with the OCCA's reliance on the Officers' observations. *See id.* Respondent contends Clayton's statement to Dawson was nontestimonial[5] and the OCCA's harmless error determination was not contrary to clearly

---

[5] Respondent argues the OCCA was incorrect to find the Sixth Amendment error. ECF No. 9 at 18-27. However, this Court will assume error and focus on the OCCA's harmless error ruling. *See Lockyer,* 538 U.S. at 71 ("AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) – whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law. In this case, we do not reach the question of whether the state court erred and instead focus solely on whether § 2254(d) forecloses habeas relief[.]").

established Supreme Court precedent or an unreasonable application of the *Chapman* standard.  ECF No. 9 at 18-30.

This Court must determine whether the OCCA's adjudication was unreasonable under the AEDPA.  *Id.* at 135 ("When a state court has applied *Chapman,* § 2254(d)(1) requires a habeas petitioner to prove that the state court's decision was unreasonable.").  The Court determines it was not unreasonable.

After finding the existence of a Sixth Amendment error, the OCCA correctly identified the Supreme Court's review standard: harmless beyond a reasonable doubt.  *See* ECF No. 9-1 at 19.  It then determined the trial court's error was harmless beyond a reasonable doubt because the properly admitted evidence (Tafolla standing over Clayton beating him on the sidewalk and marks from Tafolla's brass knuckles on the back of Clayton's head indicating Clayton was assaulted from behind) supported the verdict and punishment. ECF No. 9-1 at 20.

As noted by the OCCA, there is substantial evidence of Tafolla's guilt even eliminating Clayton's statements as recounted by Dawson.  Dawson testified he observed Tafolla "straddling or mounted on top of a black male who was laying on the back of a sidewalk.  He was striking him repeatedly in the face and we could see his head was impacting the sidewalk when we observed this."  ECF No. 10-3 at 154.  Dawson further testified he witnessed

Clayton's "head coming up from the impact and striking the sidewalk numerous times." *Id.* at 155. Dawson also witnessed Tafolla throw something into the grass and, subsequently, recovered brass knuckles wet with blood. *Id.* at 157. Clayton had lacerations on the back of his head in the shape of a wolf's head, consistent with the shape of the brass knuckles. *Id.* at 176. Tafolla testified the brass knuckles were his and admitted to engaging in a physical altercation with Clayton, albeit he claimed it was self-defense. *Id.* at 246-247, 249, 256, 261. A fairminded jurist could agree with the OCCA that any constitutional error was harmless beyond a reasonable doubt. *See Davenport,* 596 U.S. at 120. Therefore, the OCCA's decision applying this standard was reasonable under the AEDPA. Habeas relief as to this claim is denied.

## III.    Gang Affiliation Evidence (Ground V)

Tafolla also challenges the admission of his gang affiliation as violating his Fourteenth Amendment right to due process. ECF No. 3 at 9-10. Tafolla contends the prosecutors "repeatedly presented argument and testimony regarding [his] status as a member of a gang, the UAB" and "repeatedly tried to elicit information from [Tafolla] about the underlying fact of his prior felony convictions." *Id.* at 9. Tafolla believes the information was elicited to "prejudice the jury against [Tafolla][.]" *Id.* Tafolla claims the admission of

such evidence "was both contrary to and involved an unreasonable application of federal law." *Id.*

## A. Additional Facts

The State provided pretrial notice of intent to admit *res gestae* evidence and/or evidence of other crimes and/or bad acts which specifically contemplated Tafolla's UAB membership. ECF No. 10-7 at 74-92. The State also filed a Motion to Display Defendant's Tattoos. ECF No. 10-8 at 38-39. The trial court ruled the evidence admissible. The trial court preliminarily ruled Tafolla's gang affiliation was admissible to show his attitude and feeling of malice against blacks [ECF No. 10-2 at 96-97, 99], was relevant to motive and absence of mistake [*Id.* at 97, 99] and Tafolla "injected his membership in the UAB into the incident itself[.]" [*Id.* at 97].[6] The trial court further concluded the UAB symbolism of Tafolla's tattoos and brass knuckles were *res gestae. See id.* at 97-98. After the *Jackson v. Denno* hearing, the trial court further ruled the gang affiliation evidence was relevant to establish intent in light of Tafolla's self-defense theory. ECF No. 10-3 at 125-26. The trial court concluded the evidence was not unduly prejudicial rendering it admissible at trial. *Id.* at 126-27.

---

[6] After hearing testimony and argument at a *Jackson v. Denno* hearing, the trial court also ruled Tafolla's statement to Dawson, "I am UAB" was admissible. ECF No. 10-3 at 119 ("I will allow that question and that statement made by the defendant."); *see also id.* at 105-119.

At trial, Dawson was permitted to testify about his experience with the Tulsa Police Department's Organized Gang Unit and his knowledge of the UAB. *Id.* at 145-146, 151-152. Dawson testified the UAB is a white supremacy gang, tattoos can be indicative of devotion to a gang and symbols such as swastikas, iron crosses, SS, bolts and Nazi symbolism are images that communicate UAB gang affiliation. *Id.* at 145-147; 149-151. Further, Dawson testified to the significance of wolves to the UAB. *See id.* at 173. Pertinent to this claim, upon separating Tafolla and Clayton, Dawson observed Tafolla was heavily tattooed and noted a clover leaf tattoo. Dawson testified:

> A: And I observed that he had numerous cloverleaf tattoos on his body.
> Q: Did you inquire about the cloverleaf tattoos?
> A: I did. I made a note to him that I saw the cloverleaf tattoo and I asked if he was Irish Mob because we had seen an increase in Irish Mob recently.
> Q: What was his response when you asked him if he was Irish Mob?
> A: He was almost angered by the question. You could tell that it upset him. And his response was something along the line of I am UAB. Do you see the fucking swastika, and then pointed to a tattoo.

*Id.* at 169.

Beyond the swastika, Tafolla was tattooed in images of an iron cross, the words "white pride" and "white and wild." *Id.* at 178-180. Additionally, Dawson recovered brass knuckles with wolf heads that he observed Tafolla

22

throw when the detectives arrived on the scene.  *Id.*at 171-173.  Dawson's testimony regarding the UAB was not objected to by the defense at trial.

Tafolla was subsequently cross-examined regarding his affiliation with the UAB and his tattoos.  *Id.* at 256-257, 259-262, 264-266.  The trial court instructed the jury that the evidence related to UAB's beliefs, symbolism, defendant's association with that group, and his tattoos related to his association of that group could not be considered as proof of the charged offense.  *Id.* at 199-200; ECF No. 10-9 at 20.  Rather, the evidence was received solely on the issue of defendant's alleged motive, intent and/or absence of mistake or accident and was to be considered for only those limited purposes.  ECF No. 10-3 at 199-200; ECF No. 10-9 at 20.

### B. OCCA Decision

On direct appeal, Tafolla challenged the admission of his gang affiliation as violating his due process right to a fair trial.  *See* ECF No. 9-2 at 21.  In its Opinion, the OCCA noted "the gang related evidence about which Tafolla complains in this proposition was not met with objection when it was introduced at trial.  Accordingly, we review the admission of this evidence for plain error only."  ECF No. 9-1 at 7.  The OCCA then distinguished Tafolla's case from *Dawson v. Delaware,* 503 U.S. 159 (1992).  ECF No. 9-1 at 8-9.  In contrast to *Dawson,* where the evidence of gang affiliation was irrelevant, the OCCA held "evidence that Tafolla was a member of the UAB and evidence

23

about the UAB gang was relevant and admissible." *Id.* at 10. The OCCA

concluded, "[t]here was no error, plain or otherwise, in the admission of this

evidence." *Id.* at 10.

### C. Analysis and Conclusion

"In a habeas proceeding claiming a denial of due process, '[a federal

court] will not question the evidentiary ... rulings of the state court unless

[the petitioner] can show that, because of the court's actions, his trial, as a

whole, was rendered fundamentally unfair.'" *Maes v. Thomas*, 46 F.3d 979,

987 (10th Cir. 1995) (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir.

1991)); *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (habeas relief

is appropriate only if the evidence was "so grossly prejudicial that it fatally

infected the trial and denied the fundamental fairness that is the essence of

due process"). "[W]e approach the fundamental fairness analysis with

'considerable self-restraint.'" *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th

Cir. 1998) (quoting *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir.

1990) (en banc)). A proceeding is fundamentally unfair under the Due

Process Clause only if it is "shocking to the universal sense of justice."

*United States v. Russell*, 411 U.S. 423, 432 (1973) (internal quotation

omitted).

This Court's review of the trial court record reveals Tafolla was not

denied due process. First, the trial court conducted multiple hearings

regarding the admission of Tafolla's gang affiliation and information regarding the UAB before determining the challenged evidence was not only relevant and admissible but also more probative than prejudicial. *See, supra* section III.A.  Further, Tafolla testified on direct examination to his familiarity with gangs.  ECF No. 10-3 at 244.  Finally, the trial court provided the jury with a cautionary instruction on two occasions.  *Id.* at 199-200; ECF No. 10-9 at 20.

Additionally, separate and apart from Tafolla's gang affiliation, the evidence of Tafolla's guilt was strong.  *Johnson v. Martin,* 3 F.4th 1210, 1231 (10th Cir. 2021) ("Where evidence against a defendant is strong, the likelihood that erroneously admitted evidence will have an unduly prejudicial impact is lessened.").  Dawson observed Tafolla repeatedly striking Clayton in the face while Clayton was laying on the sidewalk.  ECF No. 10-3 at 154.  Dawson observed Tafolla throw something into the grass and recovered wolf-head brass knuckles wet with blood.  *Id.* at 157.  Clayton had lacerations on the back of his head consistent with the shape of the wolf's head.  *Id.* at 176.  And Tafolla testified the brass knuckles were his and admitted to engaging in a physical altercation with Clayton.  *Id.* at 246-247, 249, 256, 261.

Tafolla has not demonstrated how the challenged evidence fatally infected his trial and rendered the whole proceeding fundamentally unfair.

Nor has he shown that the OCCA's decision on his due process claim was objectively unreasonable.  Habeas relief as to this claim is denied.

## IV.    Excessive Sentence (Ground IV)

Tafolla also presents a claim to this Court which was not previously presented to a state court.  Concerning his fourth claim for habeas relief, Tafolla argues "the life sentence imposed for Count One is grossly disproportionate to the severity of the criminal conduct at issue here to the point it violates the Eighth Amendment prohibition against cruel and unusual punishment."  ECF No. 3 at 8.  Tafolla represents this ground was raised on direct appeal and through a post-conviction proceeding.  ECF No. 2 at 10.  Respondent retorts this representation is incorrect.  ECF No. 9 at 61.  Respondent states Tafolla previously raised a *Sixth Amendment* ineffective assistance of appellate counsel claim premised upon his appellate counsel's failure to raise the Eighth Amendment claim on direct appeal, not an Eighth Amendment excessive sentence claim.  *Id*.  Therefore, Respondent contends this claim is procedurally defaulted.  *Id*.  In his Reply, Tafolla contends the issue was raised to the district court because, while addressing Tafolla's Sixth Amendment ineffective assistance of appellate counsel claim, the state court remarked, "[Tafolla's] sentence is within the permissible range and is appropriate given his conduct, his history and the facts of the case."  ECF No. 11 at 10 (quoting ECF No. 9-7 at 11).  However, Tafolla contends the OCCA

did not address the claim on the merits rendering *de novo* review appropriate. *See id.*

### A. Analysis and Conclusion

Prior to the instant Petition, Tafolla did not fairly present an Eighth Amendment excessive punishment claim to the state court. A review of Tafolla's instant Petition reveals he claimed, through his post-conviction proceeding, that "appellate counsel [was] ineffective for failure to raise excessive punishment/ Eighth Amendment issue." ECF No. 2 at 3. The district court concluded appellate counsel was not ineffective for failing to raise this issue. ECF No. 9-7 at 10-12. To reach this conclusion, the state court considered whether the sentence shocked the conscience necessitating a modification. *Id.* at 11.[7] Considering the permissible range, Tafolla's conduct, his history and the facts of the case, the district court concluded the sentence did not shock the conscience. *Id.* The district court continued its analysis finding Tafolla's appellate counsel was not ineffective for "failing to raise an obviously losing proposition on appeal[.]" *Id.* Nowhere in the

---

[7] "[I]n certain circumstances, appellate counsel's omission of an issue may constitute ineffective assistance under *Strickland*. In analyzing such claims, the court must consider the merits of the omitted issue." *Malicoat v. Mullin,* 426 F.3d 1241, 1249 (10th Cir. 2005) (citing *Smith v. Robbins,* 528 U.S. 259, 288 (2000) and *Cargle v. Mullin,* 27 F.3d 1196, 1202 (10th Cir. 2003)).

district court's analysis was there any consideration of the Eighth Amendment. *See* ECF No. 9-7.

Subsequently, the OCCA concluded, "[w]e find no merit in the claim that Petitioner was denied effective assistance of appellate counsel as alleged in his post-conviction application." ECF No. 9-10 at 4. The OCCA affirmed the district court's denial of Tafolla's application for post-conviction relief. *Id.* at 4-5.

This Petition is the first time the substance of Tafolla's Eighth Amendment claim has been presented to any court. "A constitutional claim of ineffective assistance of counsel does not preserve a federal constitutional challenge 'to the underlying legal rules that the allegedly ineffective counsel should have invoked.'" *Rucker v. Norris,* 563 F.3d 766, 769 (8th Cir. 2009) (quoting *Ford v. Norris,* 364 F.3d 916, 918 (8th Cir. 2004)); *see also Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004) ("an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues."). The Eighth Amendment claim departs significantly from the Sixth Amendment claim presented to the state courts and the state courts have not had a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [Tafolla's Eighth Amendment] claim." *Anderson v. Harless,* 459 U.S. 4, 6 (1982). Accordingly, this claim is not exhausted.

28

The Court finds that the OCCA would apply a procedural bar if Tafolla were to return to state court to exhaust this claim through an application for post-conviction relief because he could have, but did not, raise the Eighth Amendment claim on direct appeal. *See Grant,* 886 F.3d at 891-92. Tafolla, resting on his assertion that the claim is not procedurally barred, does not attempt to show why this Court should review his procedurally barred claim. *See* ECF. No. 11 at 10-11. Therefore, Tafolla has not overcome the procedural bar, and habeas relief as to this claim is denied.

## V.    Prosecutorial Misconduct (Ground II)

Tafolla's remaining claims rely upon a mix of exhausted and unexhausted bases. The Court now untangles the web of claims asserted by Tafolla.

Tafolla's second claim for habeas relief is prosecutorial misconduct in violation of the Fourteenth Amendment. ECF No. 2 at 7. Tafolla alleges, the "Prosecutor made repeated statements in closing argument and in evidence presentation which referred to Petitioner's prior convictions, stating he stabbed a Black man, made improper references to probation, raised other improper subjects and speculation, and engaged in name-calling." *Id*. In his Brief, Tafolla expands, "[i]n closing argument, the prosecutor impermissibly implored the jurors to protect society from [Tafolla], inflaming the passions of the jury." ECF No. 3 at 5. "The prosecutors also repeatedly mentioned Mr.

Clayton by stating that 'this victim, Mr. Clayton, would have been killed by this defendant's attack had these officers not intervened.'  They said that Mr. Clayton was afraid to appear and testify." *Id.* at 6.  Finally, Tafolla asserts, "the prosecutor brought up gang-affiliation evidence and inquired about the underlying facts of [Tafolla's] previous convictions, to imply that race was a factor in the altercation with Mr. Clayton." *Id.*

Respondent counters Tafolla's second claim is a made up of: i) propositions previously presented to the OCCA and properly decided; and ii) new propositions which were not fairly presented to the state courts rendering the new bases procedurally defaulted.  ECF No. 9 at 31-32.  The Court will first address underlying instances of alleged prosecutorial misconduct which were previously presented to the OCCA.

## A. Presented on Direct Appeal:  Prosecutor's Closing Arguments

On direct appeal, Tafolla claimed, "[t]he prosecutor engaged in misconduct which deprived the Appellant of his right to a fair trial and sentencing and was a violation of his rights to Due Process and Fundamental Fairness guaranteed by the Fourteenth Amendment[.]"  ECF No. 9-2 at 42.  Specifically, Tafolla challenged the prosecutor's: i) arguments to the jury to protect society; ii) speculation that Clayton would have been killed had the detectives not intervened and that Clayton was afraid to testify; and iii)

name-calling by referring to Tafolla as a predator. *Id.* at 43-47. Tafolla and the OCCA recognized these alleged instances of prosecutorial misconduct were not met with objection at trial. *See* ECF No. 9-2 at 47; ECF No. 9-1 at 22-23. Therefore, the OCCA reviewed for plain error. ECF No. 9-1 at 23-26.

The OCCA concluded, "[t]he argument at issue here did not appeal to societal alarm and was not error, plain or otherwise." *Id.* at 24. Regarding the prosecutor's statements about Clayton, the OCCA ruled, "[t]he comments at issue were based upon the evidence and certainly, if bordering upon impropriety, did not rise to the level of plain error." *Id.* at 25. Concerning the prosecutor's speculation, the OCCA concluded, "[t]his questioning was proper impeachment" and "[t]he prosecutor's questions were not improper nor were his comments on the witness's responses in closing." *Id.* at 26. Finally, regarding the name-calling, the OCCA held, "[w]hile the prosecutor should have refrained from name-calling, the argument at issue was largely proper and certainly not plain error." *Id*. The OCCA denied Tafolla's prosecutorial misconduct claim raised on direct appeal. *Id.*

### i.    Analysis and Conclusion

Accordingly, these instances of alleged prosecutorial misconduct were fairly presented to the state court and this Court will review applying the requisite § 2254(d) deference. Tafolla must demonstrate the OCCA's decision

was an unreasonable application of clearly established federal law. *Workman*, 560 F.3d at 1170.

"To prevail on a claim based on improper remarks by the prosecutor, a petitioner generally must demonstrate that the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Bland,* 459 F.3d at 1014 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974), and citing *Le v. Mullin,* 311 F.3d 1002, 1013, 1018 (10th Cir. 2002)). A reviewing court evaluating a prosecutorial-misconduct claim must consider the alleged misconduct in the context of the "entire proceedings, including the strength of the evidence against the defendant." *Hanson v. Sherrod*, 797 F.3d 810, 843 (10th Cir. 2015).

The Court finds that § 2254(d) bars relief as to this prosecutorial-misconduct claim. First, the OCCA correctly identified the controlling legal principle from *Donnelly* to evaluate Tafolla's allegations of misconduct. *See* ECF No. 9-1 at 23. The OCCA cited its own decision for the proposition that reversible prosecutorial misconduct requires a showing that "the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair." ECF No. 9-1 at 23 (citing *Jones v. State,* 354 P.3d 997, 998 (Okla. Crim. App. 2011)); *see also Bland* 459 F.3d at 1024 (noting since the standard applied by the state court was the same as that under federal law, the AEDPA deferential standard of review was applicable).

32

Thus, the OCCA's decision, as to Tafolla's allegations of prosecutorial

misconduct raised on direct appeal, was not contrary to clearly established

federal law.

Second, Tafolla's arguments do not suggest, much less show, that the

OCCA unreasonably applied the fundamental-fairness test when it evaluated

each alleged instance of misconduct.  Furthermore, as noted above, there was

strong evidence of Tafolla's guilt.  Considering this evidence, the OCCA's

decision was not an unreasonable application of clearly established federal

law.  Therefore, habeas relief as to this claim is denied.

### B. Raised in Application for Post-Conviction Relief: Additional Instances

In his application for post-conviction relief, Tafolla alleged, "additional

instances of prosecutorial misconduct not raised on direct appeal, nor

objected to by trial counsel deprived the Defendant/Petitioner of a fair trial[.]"

ECF No. 9-5 at 7.  To support this claim, Tafolla stated, "[t]his case was rife

with repeated instances of prosecutorial misconduct, some of which were

raised on direct appeal, but some were not.  The combination of all of the

instances of misconduct contributed to denial of due process."  *Id.* at 8.  The

district court denied relief noting, Tafolla "fail[ed] to identify what additional

incidents were not raised in Petitioner's direct appeal with anything other

than a broad general statement that he was denied due process." ECF No. 9-7 at 6.

On appeal of the denial of the application, the OCCA noted, "[e]xcept as related to his ineffective assistance of appellate counsel claim, consideration of Petitioner's claims for relief are procedurally barred." ECF No. 9-10 at 2. The OCCA cited *Logan v. State*, which provides, "[i]ssues that were previously raised and ruled upon by this Court are procedurally barred from further review under the doctrine of *res judicata*; and issues that were not raised previously on direct appeal, but which could have been raised, are waived for further review." *Logan v. State,* 293 P.3d 969, 973 (Okla. Crim. App. 2013); *see also* ECF No. 9-10 at 2-3.

### i.    Analysis and Conclusion

Tafolla does not dispute the independence or adequacy of the state procedural ground on which the OCCA denied his claim. *See* ECF No. 3 at 4-6. Tafolla requests this Court give "this issue closer scrutiny" and urges the additional instances of prosecutorial misconduct "should not be summarily brushed aside." *Id.* at 5, ECF No. 11 at 6. Having reviewed the state appellate rules and opinion cited by the OCCA as the grounds for denial, the Court finds no indication that they implicate federal law or that the OCCA's decision was otherwise based on federal law. Further, Respondent provided argument and authority supporting a finding of independence and adequacy,

and Tafolla failed to provide "specific allegations" concerning either. *Hooks*, 184 F.3d at 1217.

Thus, to overcome the procedural bar, Tafolla must demonstrate either "cause for the default and actual prejudice," or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Tafolla has neither asserted cause and prejudice excusing his procedural default nor provided argument suggesting that his claim must be reviewed on the merits to prevent a fundamental miscarriage of justice. *See Spears v. Mullin*, 343 F.3d 1215, 1252-53 (10th Cir. 2003) (finding claim procedurally barred where petitioner did not allege cause and prejudice or a fundamental miscarriage of justice).

To the extent Tafolla requests this Court grant federal habeas relief based upon the additional grounds of prosecutorial misconduct he urged in his post-conviction relief application, the Court finds that Tafolla's claim is procedurally barred from federal habeas review. Therefore, habeas relief as to this claim is denied.

### C. Allegations Presented for First Time: Prosecutor's Closing Arguments

Finally, in his Petition, Tafolla contends the "prosecutor made repeated statements in closing argument and in evidence presentation which referred to [Tafolla's] prior convictions, stating he stabbed a Black man, [and] made improper references to probation[.]" ECF No. 2 at 7; *see also* ECF No. 3 at 6

35

("the prosecutor brought up gang-affiliation evidence and inquired about the underlying facts of [Tafolla's] previous convictions, to imply that race was a factor in the altercation[.]").[8] Tafolla also asserts, "in cross-examination of [Tafolla], the prosecutor brought up gang-affiliation evidence[.]" ECF No. 3 at 6.

Importantly, on direct appeal, Tafolla challenged the *admission* of this evidence. Specifically, Tafolla argued,

> The State was improperly permitted to *present evidence* of the underlying facts of the prior felony convictions used for enhancement, and improper prosecutorial evidence and argument concerning probation deprived the Appellant of his right to Due Process and Fundamental Fairness guaranteed by the Fourteenth Amendment and Article II, Section 7 of the Oklahoma Constitution.

ECF No. 9-2 at 40 (emphasis added). Tafolla specified, "Trial Counsel for the Appellant permitted the State to ask about the details of Appellant's prior crimes[.]" *Id.* at 41. "The State emphasized Appellant's prior crimes against minorities in his closing argument[.]" *Id.* Tafolla also challenged the State's mention of probation and the admission of evidence related to Tafolla's gang affiliation. *See* ECF No. 9-2 at 41-42, 22-37. However, Tafolla did not

---

[8] These are different closing argument statements than the ones Tafolla took issue with on direct appeal. *Compare* ECF No. 9-2 at 43-47 (challenging prosecutor's arguments to the jury to protect society, speculation that Clayton would have been killed and Clayton was afraid to testify, and name-calling) *with* ECF No. 2 at 7 (challenging prosecutor's closing argument statements concerning Tafolla's prior convictions and improper references to probation).

challenge these instances as *prosecutorial misconduct*, only as erroneously admitted. *See id.* at 40-42.

### i. Analysis and Conclusion

Prior to the instant Petition, Tafolla did not fairly present a prosecutorial misconduct claim as to these instances to the state court. The current claim departs significantly from his prior claim challenging the admission of certain evidence, and the state courts have not had a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [the prosecutorial misconduct] claim." *Anderson*, 459 U.S. at 6. Accordingly, this claim is not exhausted.

The Court further finds that the OCCA would, once again, apply a procedural bar if Tafolla were to return to state court to exhaust this claim through an application for post-conviction relief because he could have, but did not, raise this prosecutorial misconduct claim on direct appeal. *See Grant*, 886 F.3d at 891-92. Tafolla does not attempt to show why this Court should review his procedurally barred claim. Therefore, Tafolla has not overcome the procedural bar, and habeas relief as to this claim is denied.

## VI. Ineffective Assistance of Trial Counsel (Ground III)

Tafolla contends his trial counsel was ineffective "in multiple respects, most notably by her failure to offer exculpatory evidence – a dash camera video, which was provided to her by the State in discovery." ECF No. 3 at 6.

Tafolla further argues trial counsel was ineffective for failing "to object to numerous instances of prosecutor misconduct, trial court evidentiary rulings and other deficient conduct." *Id.* (referencing three (3) pages of trial counsel's failures listed in direct appeal). Tafolla summarily argues, "the state court's dismissiveness of[] the ineffective assistance of counsel claims – on direct appeal and post-conviction – was unreasonable." *Id.*

### A. The OCCA's Decision: Trial Counsel's Failure to Object

As noted, on direct appeal, Tafolla pointed to numerous instances in which his trial counsel failed to object claiming these failures established deficient performance by his counsel which was prejudicial to him. *See* ECF No. 9-2 at 51-53. Relying on *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA held, "Tafolla has not shown on the record that but for counsel's actions the result of his trial would have been different. Because he has failed to establish prejudice from his attorney's actions, Tafolla's ineffective assistance of counsel claim is denied." ECF No. 9-1 at 33.

In his application for post-conviction relief, Tafolla claimed his trial counsel was ineffective because she failed to object to the prosecutor's misconduct. *See* ECF No. 9-5 at 7-8. The district court held, "[e]rrors related to Proposition IV, insofar as they related to [Tafolla's] trial counsel failing to object to prosecutorial misconduct, were raised in his appeal and ruled on by the Oklahoma Court of Criminal Appeals. To the extent that they were not

raised on direct appeal, but could have been, they are barred by the doctrine of waiver."  ECF No. 9-7 at 5.  On post-conviction appeal, the OCCA held Tafolla's claims for ineffective assistance of trial counsel were procedurally barred.  ECF No. 9-10 at 2.

### i.    Analysis and Conclusion

Under clearly established federal law, the Sixth Amendment guarantees a criminal defendant "the right to the effective assistance of counsel."  *Strickland*, 466 U.S. at 685-86 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  And the framework for assessing any such claim requires a reviewing court to consider (1) whether counsel performed deficiently and, if so, (2) whether counsel's deficient performance prejudiced the defendant.  *Id.* at 687.  A defendant can demonstrate deficient performance by showing that counsel's alleged acts or omissions were objectively unreasonable "under prevailing professional norms."  *Id.* at 687-88.  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Because the OCCA applied *Strickland,* Tafolla must establish the OCCA unreasonably applied *Strickland.* On the record presented, Tafolla cannot show that the OCCA's adjudication of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Both detectives testified as to their observations of Tafolla beating Clayton [ECF No. 10-3 at 154, 202], Tafolla throwing an item into the grass upon the detectives' arrival and brass knuckles being recovered [*id.* at 157], the injuries Clayton sustained to his face and back of his head [*id.* at 176] and Tafolla testified he did hit Clayton using the brass knuckles [*id.* at 246-47, 249, 256, 261]. The jury rejected Tafolla's self-defense theory, possibly due to the injuries to the back of Clayton's head. Tafolla cannot show that the OCCA's rejection of his Sixth Amendment claim for failure to show prejudice "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Therefore, as to Tafolla's ineffective assistance of trial counsel claim premised upon his trial counsel's failures to object to certain evidence and arguments, habeas relief as to this claim is denied.

## B. The OCCA's Decision:  Trial Counsel's Failure to Admit the Dash Cam Video

Tafolla also contends his trial counsel was ineffective for failing to introduce dash cam video evidence at trial.  ECF No. 2 at 8, ECF No. 3 at 6.  Tafolla believes the video contradicts the detectives' testimony.  ECF No. 2 at 8, ECF No. 3 at 6.  Tafolla did not raise the failure to admit the dash cam video as a basis of his ineffective assistance of counsel claim on direct appeal.  *See* ECF No. 9-2.

In his application for post-conviction relief, Tafolla argued for the first time his trial counsel was ineffective for failing to use the dash cam video.  ECF No. 9-5 at 6.  He claimed the issue was not raised on direct appeal because "the record was silent regarding the existence of the 'dash-cam' video, so this could not have been raised on direct appeal."  ECF No. 9-5 at 7.[9]  The district court ruled,

> Errors related to his ... trial counsel's utilization of video evidence she had, could have been raised by [Tafolla] in his direct appeal, but was [sic] not.  This Court finds that [Tafolla] failed to meet his burden to show that an external impediment prevented him or his appellate counsel from raising this claim.  Accordingly, this Court concludes that this claim is barred by the doctrine of waiver.

ECF No. 9-7 at 4.  The OCCA affirmed the district court's ruling and held this claim was procedurally barred.  ECF No. 9-10 at 2-3.

---

[9]  The record does not support this assertion.  Tafolla's trial counsel filed a motion in limine concerning the dash cam video.  *See* ECF No. 10-7 at 70.

### i.    Analysis and Conclusion

Tafolla argues "the state court's dismissiveness of[] the ineffective assistance of counsel claims --- … post-conviction --- was unreasonable." ECF No. 3 at 7. However, since the OCCA ruled the claim was procedurally barred, Tafolla must establish the OCCA's decision did not rest on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman,* 501 U.S. at 729.

This Court finds no indication that the OCCA's ruling implicated federal law or that the OCCA's decision was otherwise based on federal law. *See* ECF No. 9-10 at 2. Therefore, the OCCA's decision rests on an independent state law ground. The Court also concludes the OCCA's procedural default doctrine is firmly established and regularly followed. Accordingly, this Court will not address this procedurally defaulted claim unless Tafolla can demonstrate cause and resulting prejudice or a fundamental miscarriage of justice. *Harmon,* 936 F.3d at 1060.

Tafolla summarily states, he "can show cause and actual prejudice for his default." ECF No. 11 at 9. However, Tafolla fails to demonstrate any such cause and actual prejudice. *See Grant,* 886 F.3d at 889-90. Therefore, to the extent Tafolla asks this Court to grant federal habeas relief based upon his trial counsel's failure to admit the dash cam video, the Court finds that Tafolla's claim is procedurally barred from federal habeas review.

## VII.    Ineffective Assistance of Appellate Counsel (Ground III)

Lastly, Tafolla claims his appellate counsel was ineffective "for failing to raise [the dash cam video evidence] among other issues on direct appeal." ECF No. 2 at 8.  In his Brief, Tafolla expands, "the failure to raise the Eighth Amendment claim and the additional instances of prosecutorial misconduct by appellate counsel resulted in prejudice to [Tafolla].  Plus, appellate counsel neglected to raise the issue of error in failure of the trial court to give a lesser-included jury instruction."  ECF No. 3 at 8.  Tafolla's allegations include a mix of exhausted and unexhausted bases for this claim.  The Court will address Tafolla's exhausted bases first.

### A.    Raised in Application for Post-Conviction Relief: Eighth Amendment, Lesser Included Offense Instruction and Prosecutorial Misconduct

In his application for post-conviction relief, Tafolla argued his appellate counsel was ineffective for failing to raise: i) the Eighth Amendment/ excessive punishment claim; ii) the trial court's failure to instruct the jury of the lesser included offense of assault and battery; and iii) additional instances of prosecutorial misconduct.  ECF No. 9-5.  The district court applied *Strickland* and analyzed Tafolla's claim.  ECF No. 9-7 at 5-12.  The district court noted Tafolla's sentence was within the statutory range and was appropriate given Tafolla's conduct, history and the facts of the case.  *Id.* at 11.  Therefore, the district court concluded Tafolla's appellate counsel was

not ineffective for failing to raise an "obviously losing proposition on appeal[.]" *Id.* Further, the district court ruled Tafolla was not entitled to the lesser included offense instruction because "there was an entire absence of evidence to negate the use of brass knuckles, a dangerous weapon[.]." *Id.* at 10. The district court also concluded Tafolla failed to adequately support his claim for ineffective assistance of appellate counsel based upon appellate counsel's failure to raise additional incidents of prosecutorial misconduct. *Id.* at 6-8. Tafolla appealed the district court's decision. ECF No. 9-9 at 9-10. Relying on the *Strickland* test, the OCCA concluded, "we find no merit in the claim that [Tafolla] was denied effective assistance of appellate counsel[.]" ECF No. 9-10 at 4.

### i.    Analysis and Conclusion

The OCCA correctly identified the *Strickland* test. *See* ECF No. 9-10 at 3; *see also Malicoat v. Mullin,* 426 F.3d 1241, 1248 (10th Cir. 2005) (noting *Strickland* is the appropriate test to apply to an ineffective assistance of appellate counsel claim). The OCCA then determined Tafolla's claim was meritless. *Id.* at 4.

Thus, Tafolla must establish the OCCA unreasonably applied *Strickland. See Upchurch v. Bruce,* 333 F.3d 1158, 1167 (10th Cir. 2003). Under *Strickland*, a defendant must show (1) his counsel's performance was deficient and that (2) the deficient performance was prejudicial. *Strickland,*

466 U.S. at 687. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The Tenth Circuit has consistently held that "[w]hile counsel should not omit 'plainly meritorious' claims, counsel need not raise meritless issues." *Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008) (citation omitted). To prevail, a petitioner must "show an 'objectively unreasonable' decision by the appellate counsel as well as a 'reasonable probability that the omitted claim would have resulted in relief.'" *Id.* (citation omitted).

After reviewing the record and the merits of the omitted claims, even if appellate counsel raised these three (3) instances on direct appeal, Tafolla cannot demonstrate that the result of his appeal would have been different. Considering Tafolla's two (2) prior felony convictions, the sentence imposed was within the statutory range. Okla. Stat. tit. 21, §§ 645, 51.1(B), Okla. Stat. tit. 57, § 571. The evidence also established Tafolla utilized a deadly weapon to assault Clayton. ECF No. 10-3 at 154, 157, 176. Furthermore, in light of the strong evidence of Tafolla's guilt, raising additional instances of prosecutorial misconduct would not have established the trial was fundamentally unfair. It follows, Tafolla cannot establish the prejudice prong of *Strickland* and the OCCA's adjudication of this claim is not contrary to or

an unreasonable application of clearly established federal law.  Habeas relief as to this claim is denied.

### B. Allegations Presented for the First Time:  Dash Cam Video

Concerning the dash cam video, Tafolla did not present his argument that his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness as it relates to the dash cam video in his application for post-conviction relief.  *See* ECF No. 9-5.  Accordingly, this claim was not fairly presented to the state court.  *Fairchild*, 579 F.3d at 1151.  Further, the OCCA would apply a procedural bar if Tafolla were to return to state court to exhaust this claim through an application for post-conviction relief because he could have, but did not, raise this claim in his initial application for post-conviction relief.  *Smallwood,* 191 F.3d at 1267.  Tafolla does not demonstrate why this Court should review his procedurally barred claim.  Therefore, Tafolla has not overcome the procedural bar, and habeas relief as to this claim is denied.

### *CONCLUSION*

The Court finds and concludes that Tafolla has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254.  The Court therefore denies the Petition as to all five (5) claims raised therein.  The Court further concludes that no certificate of appealability shall issue

because reasonable jurists would not debate the correctness of this Court's assessment of Tafolla's constitutional claims or its determination that some claims, in whole or in part, are procedurally barred.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Petition [ECF No. 2] is **denied**; a certificate of appealability is **denied**; and a separate judgment shall be entered in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall note on the record the substitution of David Rogers, Warden, in place of Jim Farris as party Respondent.

**IT IS SO ORDERED** this 18th day of March, 2025.

Sara E. Hill
UNITED STATES DISTRICT JUDGE